**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION<br>800 K Street N.W., Suite 1000<br>Washington, D.C. 20001, and<br><br>CHRISTINA RAPAGLIA<br>244 Fairmount Street, Apt. 2<br>Fitchburg, MA 01420,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNAL REVENUE SERVICE<br>U.S. DEPARTMENT OF TREASURY<br>1111 Constitution Avenue N.W.<br>Washington, D.C. 20224,<br><br>Defendant. | Case No. 4:26-cv-40246<br><br>COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. Plaintiff National Treasury Employees Union has represented employees within the Internal Revenue Service (IRS) for close to ninety years.

2. In February 2026, the IRS abruptly terminated the IRS-NTEU collective bargaining agreement (CBA). That termination violated the Administrative Procedure Act's (APA) most basic requirements of reasoned decision-making.

3. Almost one year earlier, in March 2025, the President issued Executive Order 14,251, *Exclusions From Federal Labor-Management Relations Programs*, 90 Fed. Reg. 14,553 (Mar. 27, 2025) (Exclusions Order), which excluded the IRS from

the federal labor relations statute. NTEU is not challenging the validity of the Exclusions Order in this litigation; it is doing so in a separate lawsuit, *NTEU v. Trump*, 1:25-cv-935-PLF (D.D.C.).

4. The Exclusions Order did not require agencies to terminate their CBAs. And the Office of Personnel Management (OPM) made clear to federal agencies that whether to terminate CBAs was up to them.

5. The IRS did not provide any reasoned explanation for its decision on February 27, 2026, to terminate the CBA, months after the Exclusions Order. The IRS did not engage in its own reasoned analysis, but instead merely parroted an OPM template for agencies to use when terminating CBAs. The IRS did not consider, as it is required to do, any reasonable alternatives, such as allowing the CBA to run at least through its current term. The IRS did not adequately consider NTEU's and NTEU members' reliance interests in having contractually guaranteed protections and rights.

6. For all these reasons, the IRS's CBA termination violated the APA.

## JURISDICTION & VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the APA, 5 U.S.C. §§ 701–706. The APA waives sovereign immunity for NTEU's claims seeking relief other than money damages. *Id.* § 702. IRS's termination of the NTEU-IRS CBA constitutes final agency action for which NTEU has no other adequate remedy in a court. *Id.* § 704.

8. Venue is proper in this district under 28 U.S.C. § 1391(e) because plaintiff Christina Rapaglia resides in this district.

## PARTIES

9. Plaintiff NTEU is an unincorporated labor organization with its principal place of business at 800 K Street, N.W., Suite 1000, Washington, D.C. 20001. NTEU has represented IRS employees in some capacity for almost ninety years.

10. NTEU brings this action on its own behalf. NTEU has been harmed by IRS's decision to terminate its CBA with NTEU. The IRS's termination has diminished NTEU's ability to represent its members and enforce their rights.

11. NTEU also brings this action on behalf of its IRS members, such as Ms. Rapaglia, who no longer have the rights and benefits to which they are entitled under the NTEU-IRS CBA.

12. Plaintiff Christina Rapaglia is an NTEU member who works for the IRS and lives in Fitchburg, Massachusetts. The IRS's termination of its CBA with NTEU has led to Ms. Rapaglia losing the contractual rights in that CBA. That includes her rights to certain procedures and protections in the event of a reduction-in-force; her right to a union representative for any meetings with the IRS that could lead to discipline; her access to the grievance procedure negotiated in the CBA; her contractual rights related to the IRS's performance appraisal system; and her contractual right to telework, which has caused her financial harm related to additional gas costs and wear and tear on her car.

13. Defendant IRS is a bureau of the Department of the Treasury, a cabinet-level agency of the United States government. The IRS is headquartered at 1111 Constitution Avenue, N.W., Washington, D.C. 20224.

## BACKGROUND

### I. Federal Sector Labor Law

14. In 1978, Congress enacted the Federal Service Labor-Management Relations Statute (the Statute), which governs collective bargaining for federal civil service employees. The Statute is contained within Title VII of the Civil Service Reform Act of 1978 (CSRA) and codified as Chapter 71 of Title 5 of the U.S. Code.

15. In the Statute, Congress expressly found that "the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them . . . safeguards the public interest" and "contributes to the effective conduct of public business[.]" 5 U.S.C. § 7101(a).

16. The Statute guarantees employees "the right to form, join, or assist any labor organization, or to refrain from any such activity." 5 U.S.C. § 7102.

17. The Statute also guarantees employees the right to "engage in collective bargaining with respect to conditions of employment through representatives chosen by employees under this chapter." 5 U.S.C. § 7102(2).

18. The Statute requires agencies to "accord exclusive recognition to a labor organization if the organization has been selected as the representative, in a

secret ballot election, by a majority of the employees in an appropriate unit who cast valid ballots in the election." 5 U.S.C. § 7111(a).

## II. The NTEU-IRS CBA

19. NTEU began representing IRS employees in 1938.

20. After the Statute was enacted in 1978, NTEU was certified as the exclusive bargaining representative for IRS employees.

21. As the exclusive bargaining representative, NTEU has bargained with the IRS over conditions of employment. The most recent NTEU-IRS CBA took effect in 2022 (with a term ending October 1, 2027), as amended by a 2025 Addendum.

22. The NTEU-IRS CBA guarantees important union and employee rights. The CBA requires that the IRS provide NTEU advance notice of and an opportunity to bargain over changes to conditions of employment. The CBA also provides for sick, family, and other kinds of leave; safety and health protections; telework and alternate work schedules; labor-management relations committees to facilitate communication on workplace issues; a childcare subsidy program; a grievance procedure for resolving disputes; and protections for workers facing reductions-in-force.

## III. The Exclusions Order

23. On March 27, 2025, President Trump issued the Exclusions Order. The Order exempted dozens of federal agencies from the Statute on the basis that such agencies had "as a primary function intelligence, counterintelligence, investigative, or national security work" and the Statute could not be "applied to" the agencies "in

a manner consistent with national security requirements and considerations." *Id.* §§ 1(a), 2, 90 Fed. Reg. 14,553; *see* 5 U.S.C. § 7103(b).

24. The Exclusions Order covered most of the Department of Treasury, including the IRS. Whether the Exclusions Order was a valid exercise of the President's authority is the subject of separate litigation. But even if the Order validly exempted the IRS and other agencies from the Statute, the Order did not terminate any CBAs or state that agencies were required to terminate CBAs.

## IV. OPM Guidance and the Administration's Position in the Courts

25. Administration statements issued contemporaneously with the Exclusions Order, including from OPM, confirm that agencies retained discretion whether to terminate extant CBAs.

26. In March 27, 2025 guidance, OPM advised agencies to "consult with their General Counsels as to how to implement the President's directive," recognizing that agencies would not necessarily immediately cancel their CBAs. *See* March 27 Memorandum from OPM Acting Director to Head and Acting Heads of Agencies and Departments, https://perma.cc/H5SN-T5FZ (March 27 OPM Guidance).

27. On April 22, 2025, OPM issued a "Frequently Asked Questions" (FAQs) document advising agencies not to terminate any CBAs "until the conclusion of litigation or further guidance from OPM directing such termination." OPM, *Frequently Asked Questions, Executive Order 14251* (Apr. 22, 2025), https://perma.cc/38KJ-Z7TN.

28. OPM issued updated FAQs on August 13, 2025, stating that agencies "*may choose* to terminate, abrogate, or repudiate CBAs with [non-NTEU] unions, and should consult with their General Counsels to assess next steps regarding those CBAs." OPM, *Frequently Asked Questions* (rev. Aug. 13, 2025) (emphasis added).[1]

29. On February 12, 2026, OPM issued updated guidance to agencies regarding the Exclusions Order (that was later revised on February 16, 2026), stating that "[a]gencies should, as soon as possible, terminate *or modify* all CBAs with labor unions for bargaining units impacted by Executive Order 14251[.]" OPM, *Memorandum to Heads of Departments and Agencies from Scott Kupor, Director, OPM* at 1 (Feb. 12, 2026, rev. Feb. 16, 2026), https://perma.cc/9X9S-PXB4 (OPM's February 2026 Guidance) (emphasis added).

30. OPM's February 2026 Guidance included FAQs and a suggested template termination notice for agencies. The FAQs reiterated that excluded agencies should "terminate *or modify*" their CBAs. OPM's February 2026 Guidance at 1 FAQs, https://perma.cc/9ZQQ-CHWW (emphasis added).

31. OPM's February 2026 template said agencies should state they "considered whether to terminate any CBA, in whole or in part[.]" OPM February 2026 Guidance, Template at 2, https://perma.cc/9QTF-RJMS. OPM's template further stated that the agencies should say they "reviewed the parties' CBA to determine [whether] continuing to adhere to its provisions would be consistent with

[1] These particular FAQs are no longer publicly available but are quoted by the government in Defendants' Letter to the Clerk (Aug. 14, 2025), *AFGE, et al. v. Trump, et al.*, Dkt. No. 34.1, No. 25-4014 (9th Cir.).

the President's national security determination." *Id.* The template said agencies should state that they "carefully review[ed] any applicable CBAs[.]" *Id.*

32. The Administration's position in litigation in the federal courts has likewise reflected that excluded agencies have discretion as to whether to terminate their CBAs. The day after the Order issued, the Department of Treasury sued NTEU in the Western District of Kentucky seeking a declaration that the agency was "authorized to terminate its CBAs pursuant to the Executive Order and OPM's implementing guidance." *See* Compl., Request for Relief, *U.S. Dep't of Treas. v. NTEU Ch. 73*, No. 25-cv-497, 783 F. Supp. 3d 991 (E.D. Ky. 2025).

33. The complaint in *Department of Treasury v. NTEU Ch. 73* makes clear that the Exclusions Order authorized, but did not require, agencies to terminate existing CBAs. The complaint asserts that "[b]ecause the IRS has been properly excluded from coverage under 5 U.S.C. Chapter 71, Plaintiff is free to rescind or repudiate CBAs that Defendant implements and enforces." *Id.*, ¶ 68.

34. By asking the court to "[d]eclare that Plaintiff is authorized to terminate its CBAs pursuant to the Executive Order and OPM's implementing guidance" *id.*, Request for Relief, the complaint shows that the Administration believed that it could not terminate CBAs absent a court order. The court, though, never ruled on whether Treasury could terminate CBAs because the court dismissed the case for lack of standing. *U.S. Dep't of Treas.*, 783 F. Supp. 3d at 1016.

## V. IRS CBA Termination

35. After the Exclusions Order issued, the IRS continued to follow some of the CBA's requirements. Employees were allowed to have NTEU representatives accompany them in meetings where discipline could result. NTEU retained the union office space at IRS facilities to which it was entitled. And the IRS continued to process NTEU grievances. For example, on May 27, 2025, the IRS responded in writing to an NTEU grievance.

36. Indeed, on September 18, 2025, the IRS advised NTEU that it had not terminated the CBA and was holding requests to bargain in abeyance pending the outcome of litigation challenging the Exclusions Order.

37. On February 27, 2026, Frank Bisignano, the IRS Chief Executive Officer, sent NTEU President Doreen Greenwald a memorandum (IRS Termination Memorandum) (attached) stating that the IRS "terminates the 2022 National Agreement and the 2025 Addendum[.]"

38. In late February and early March 2026, NTEU President Greenwald received termination memoranda from other agencies falling under the Exclusions Order's coverage, including several Department of Treasury components, worded almost identically to the IRS Termination Memorandum.

39. The IRS Termination Memorandum explained that it was the IRS which determined whether and when to terminate the NTEU-IRS CBA. The memorandum stated, for example, that after the Exclusions Order, "Internal Revenue Service considered *whether* to terminate any CBA, in whole or in part[.]"

IRS Term. Mem. at 2 (emphasis added). The memorandum also stated that the IRS "reviewed the partes' CBA to determine [whether] continuing to adhere to its provisions would be consistent with the President's national security determinations." *Id.* It stated that the "Internal Revenue Service has determined that continued adherence to the parties' CBA is detrimental to the agency's national security mission[.]" *Id.* at 3.

40. The IRS Termination Memorandum includes four examples of how the CBA allegedly bears on the agency's national security mission. These four examples mimic the four generic examples in the OPM February 2026 template.

41. For example, one national security explanation in the IRS Termination Memorandum states:

> Article 40 creates a procedural impediment to quickly separating poor performers beyond those required by statue or regulation. Article 40 requires a Performance Improvement Period (PIP) of never less than 60 days, as opposed to the 30 calendar days required by the Office of Personnel Management.

42. This parrots one of the national security explanations in the OPM Template which states:

> [Insert CBA provision] creates a procedural impediment to quickly separating poor performers beyond those required by statute or regulation. [Insert description of added procedures or time (e.g., informal PIPs) beyond those required under law or regulation].

43. The IRS February 2026 Memorandum also mimics the single paragraph on reliance interests in the OPM February 2026 template. The February 2026 Memorandum stated:

> The Department of the Treasury, Internal Revenue Service, also considered the interests of bargaining unit employees and the National Treasury Employees Union in continuing to adhere to the parties' CBA. The Department of the Treasury, Internal Revenue Service understands that bargaining unit employees and the National Treasury Employees Union structured certain expectations surrounding the existence of the parties' CBA, including work schedules, leave procedures, performance management, and other conditions of employment. In evaluating the effect of terminating the CBA, the Department of the Treasury, Internal Revenue Service agency reviewed whether current law, rules, regulations, and agency policies provide meaningful safeguards and procedures.

44. The OPM template stated:

> [Insert agency name] also considered the interests of bargaining unit employees and the [insert name of certified representative] in continuing to adhere to the parties' CBA. [Insert agency name] understands that bargaining unit employees and the [insert name of certified representative] structured certain expectations surrounding the existence of the parties' CBA, including work schedules, leave procedures, performance management, and other conditions of employment. In evaluating the effect of terminating the CBA, the agency reviewed whether current law, rules, regulations, and agency policies provide meaningful safeguards and procedures.

45. The IRS Termination Memorandum's paragraph on reliance interests is *identical* to the OPM template except for the insertion of the parties' names.

46. The IRS Termination Memorandum identifies a few discrete, alleged problems with the NTEU-IRS CBA, such as the cost of official time, but the IRS does not explain why it elected to terminate the CBA in its entirety instead of only terminating the allegedly problematic sections.

47. Between the March 27, 2025 Exclusions Order and the IRS's termination of the CBA on February 26, 2026, the IRS continued to engage in some of the actions that the CBA required.

48. But following the CBA termination in February 2026, the IRS began denying rights and protections that had been provided under the CBA. It evicted NTEU from its office space at IRS facilities. It cancelled labor management relations committee meetings and refused to engage in the negotiated grievance procedure. And the IRS rapidly began changing conditions of employment without notifying or negotiating with NTEU: It cancelled alternate work schedules; changed processes for seeking reasonable accommodations for medical issues or leave under the Federal Medical Leave Act; forced involuntary relocations and details on employees; changed how it evaluates employees' performance; altered how it allocates overtime shifts to employees; and suspended programs through which employees could request advancements of sick or annual leave.

## STATEMENT OF CLAIM

### I. The IRS's CBA Termination is a Final Agency Action

49. The IRS is an agency subject to the APA. 5 U.S.C. § 701(a)(2), (b)(1).

50. Under the APA, "final agency action" is "subject to judicial review." 5 U.S.C. § 704.

51. To qualify as a final agency action, an action "must (1) 'mark the consummation of the agency's decisionmaking process' and (2) be one by which 'rights or obligations have been determined, or from which legal consequences will flow.'" *Am. Anti-Vivisection Soc'y v. USDA*, 946 F.3d 615, 620 (D.C. Cir. 2020) (*quoting Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

52. The IRS's termination of the NTEU-IRS CBA was a final agency action. Legal consequences immediately flowed as NTEU and its members lost the protections and rights they enjoyed under the CBA.

## II. The IRS Did Not Engage in Reasoned Decision Making

53. Final agency actions must be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). The IRS's termination violates the APA because the agency failed to engage in reasoned decision making, failed to consider reliance interests, and failed to consider alternatives.

54. The IRS did not explain why it was terminating the CBA when it did.

55. The IRS did not explain why it was terminating the CBA wholesale, as opposed to terminating discrete sections that were allegedly harming the agency.

56. The IRS did not engage in its own reasoned decision making when it terminated NTEU's CBA. The February 2026 Memorandum instead largely copied the OPM template. For example, the February 2026 Memorandum listed the same four national security interests as the OPM template. The February 2026 Memorandum also has one paragraph stating that it considered NTEU employees' reliance interests, but that paragraph is identical to a paragraph in the OPM template, other than adding parties' names.

57. The IRS's use of the OPM template for CBA terminations and its parroting of OPM's language is not reasoned decision making. *See Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405 (D.C. Cir. 1995) (boilerplate letters "omitted the critical

step—connecting the facts to the conclusion"); *Amerijet Int'l Inc. v. Pistole*, 753 F.3d 1343, 1352 (D.C. Cir. 2014) ("programmatic boilerplate" is not a "reasoned explanation").

58. The IRS also did not consider alternatives to its action, as required by the APA. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020). It did not, for example, consider delaying the effective date of termination so that the CBA could persist for the duration that NTEU and the IRS previously agreed upon.

## CAUSE OF ACTION

### Violation of the APA—5 U.S.C § 706(2)(A)
### ***Arbitrary and Capricious Agency Action***

59. NTEU incorporates and reasserts the preceding paragraphs as though fully set forth herein.

60. Agency action is arbitrary and capricious when the agency fails to consider an important aspect of the problem or articulate a reasoned explanation for its decision. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

61. The IRS failed to offer any reasoned decision making for its CBA termination decision; it did not consider the "serious reliance interests" of NTEU and its members; and it did not consider alternatives to its actions.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

A. Declare that the Defendant's unilateral termination of the parties' CBA was unlawful because it was arbitrary and capricious in violation of the APA;

B. Set aside the Defendant's termination of the CBA;

C. Enjoin Defendant from effectuating the February 27, 2026 CBA termination;

D. Award Plaintiffs reasonable attorneys' fees and costs to the extent authorized by law; and

E. Grant such other declaratory or equitable relief as the Court deems just and appropriate.

Respectfully submitted,

*/s/ Paras N. Shah*
PARAS N. SHAH
General Counsel
Mass. Bar No. 669423

*/s/ Allison C. Giles*
ALLISON C. GILES*
Associate General Counsel

*/s/ Jessica Horne*
JESSICA HORNE*
Assistant Counsel

NATIONAL TREASURY
EMPLOYEES UNION
800 K Street N.W., Suite 1000
Washington, D.C. 20001
(202) 572-5500
paras.shah@nteu.org
allie.giles@nteu.org
jessica.horne@nteu.org

October 28, 2026

Counsel for Plaintiffs
* Pro hac vice applications forthcoming